United States District Court
District of Massachusetts

| | |
|---|---|
| ELIAS SANCHEZ, <br><br> Petitioner, <br><br> v. <br><br> NELSON ALVEZ, <br><br> Respondent. | Civil Action No. <br> 22-cv-10746 |

MEMORANDUM & ORDER

**GORTON, J.**

Before the Court is a petition for a writ of habeas corpus filed by Elias Sanchez ("Elias" or "petitioner") pursuant to 28 U.S.C. § 2254 challenging his murder conviction in the Massachusetts Superior Court for Suffolk County.

## I. Background

### A. The Murder

On November 17, 2013, a fight broke out between Elias, his brother Gabriel Sanchez ("Gabriel"), and Edwin Santos ("Santos"). The fight occurred on the sidewalk outside of the apartment building where Santos's girlfriend, Jessica Montanez ("Montanez"), lived. Montanez saw the men fighting from a window and came outside to try to break it up. As Santos and Montanez began walking back in the direction of the apartment building, they were approached by Elias and his son, Angel

-1-

Sanchez ("Angel"). Elias repeatedly hit Santos with an expandable baton. After Santos turned toward Elias and raised his hand, Angel ran toward the two of them and then repeatedly stabbed Santos, while Elias continued to beat Santos with the baton. As Elias and Angel fought with Santos, Gabriel ran toward the group and repeatedly punched Santos.

Montanez tried to protect Santos and pulled a knife from Santos's jacket. As she tried to retrieve the knife, Gabriel pushed her, picked up the knife and ran away. Elias and Angel continued to attack Santos. The entire episode lasted less than one minute and was captured by video surveillance from various angles. An autopsy revealed that Santos had sustained eighteen stab wounds to his back, shoulders, chest, head and face. He also had blunt force injuries all over his body, including multiple blunt force injuries to his head. The medical examiner opined that the wounds to Santos's sternum and lungs were fatal.

### B. State Court Proceedings

In January, 2014, a grand jury for the Massachusetts Superior Court for Suffolk County returned an indictment charging Elias, Angel and Gabriel with the murder of Santos. Following a joint trial, a jury convicted Elias of murder in the second degree on a theory of joint venture but acquitted Angel and Gabriel. At trial, both parties played the surveillance video for the jury: the Commonwealth played the video frame by

frame and assured the trial judge that the jurors could slow it down during their deliberations if they chose to do so; Gabriel's attorney played the video once during an expert witness's testimony and a second time, in slow-motion, during closing arguments.

In May, 2019, petitioner filed a motion for a new trial claiming that his trial counsel was ineffective for failing to introduce a slow-motion version of the surveillance video. Petitioner alleged that this evidence would support his theory that the fatal stab wound was accidentally inflicted by Montanez. Petitioner also claimed that trial counsel should have requested a jury instruction based on Commonwealth v. Norris, 462 Mass. 131 (2012), that if the jury were to acquit Angel based on the theory that he stabbed Santos in defense of Elias, then the killing was justifiable and there could be no murder in which Elias participated. The motion for new trial was denied and petitioner timely appealed.

In March, 2020, petitioner filed a separate direct appeal to the Massachusetts Appeals Court ("MAC"). Petitioner argued that the trial judge erred by declining to instruct the jury on assault and battery as a lesser included offense and failing to require the Commonwealth to explain its peremptory challenge of a Hispanic prospective juror.

Petitioner's direct appeal was consolidated with his appeal from the denial of his motion for a new trial based on ineffective assistance of counsel. The MAC affirmed his conviction on direct appeal and the post-judgment orders denying his motions for relief. Commonwealth v. Sanchez, 100 Mass. App. Ct. 644 (2022). The MAC viewed the surveillance video multiple times and determined that it did not support petitioner's theory that Montanez inflicted the fatal stab wound. Id. at 648. In fact, the video appeared to depict Angel, wearing a black glove, repeatedly stabbing Santos, as corroborated by a still photograph introduced at trial. Id. The MAC concluded the surveillance video did not cast doubt on petitioner's guilt, and it was therefore not an abuse of discretion to deny petitioner's motion for a new trial due to counsel's failure to introduce the slowed version of the video. Id.

The MAC also rejected petitioner's argument that Norris requires a jury instruction stating that if the Commonwealth failed to disprove that Angel acted in defense of another (Elias) and the jury acquitted Angel on that basis, it was also required to acquit Elias because the killing would be justified. Id. at 649-50. The MAC concluded that the footnote in Norris on which petitioner relied did not indicate that an acquittal would be required as a matter of law. Id.

Petitioner timely filed a request for Further Appellate Review ("FAR") from the Massachusetts Supreme Judicial Court ("SJC") but that request was denied. Commonwealth v. Sanchez, 489 Mass. 1105 (2022).

### C. Federal Court Proceedings

Elias filed the instant petition in May, 2022, pursuant to 28 U.S.C. § 2254. He once again claims that he was denied effective assistance of counsel when his trial attorney 1) failed to offer the close-up, slow-motion version of the surveillance video to present a defense that Santos was accidentally stabbed to death by Montanez and 2) failed to request a "Norris instruction."

## II. Legal Standard

### A. Federal Habeas Review

A federal court conducting habeas review is "limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must demonstrate that the underlying state court adjudication either:

> 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or

> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established Supreme Court precedent if "the state court applies a rule that contradicts the governing law set forth" in Supreme Court cases or if the facts before the state court are "materially indistinguishable" from a Supreme Court decision but "nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision represents an "unreasonable application" of Supreme Court precedent if

> the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoner's case.

Id. at 407-08. To warrant relief under the "unreasonable application" clause of subsection (d)(1), the state court's application of Supreme Court precedent "must be objectively unreasonable, not merely wrong; even clear error will not [necessarily] suffice." Porter v. Coyne-Fague, 35 F.4th 68, 75 (1st Cir. 2022)(citing White v. Woodall, 572 U.S. 415, 419 (2014)).

Section 2254 sets out a "separate and exacting standard" to evaluate a state court's factual findings. Pike v. Guarnino, 492 F.3d 61, 68 (1st Cir. 2007). The federal court must afford a

-6-

presumption of correctness to a state court's factual findings absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). A state court decision is therefore based on an "unreasonable determination of the facts" when clear and convincing evidence demonstrates that

> the underlying state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented" to the state court.

Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001).

### B.  Ineffective Assistance of Counsel

The standard for showing ineffective assistance of counsel is the familiar two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984). A petitioner must first show that counsel's performance fell measurably below objective professional standards in light of all the circumstances. Id. at 688. Here, Sanchez must show that no competent attorney would have failed to offer the slow-motion surveillance video or would have failed to request a jury instruction on self-defense. A petitioner must also show prejudice stemming from the error, meaning a

> reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Id. at 694.

Judicial scrutiny of counsel's performance must be highly deferential; counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Id. at 689-90; see also Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (holding that petitioner must show, "given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it").

When an ineffective assistance of counsel claim is previously adjudicated on the merits by the state court, a petitioner must satisfy not only the two-prong Strickland standard but also the AEDPA standard for evaluating state court decisions. Yeboah-Sefah v. Ficco, 556 F.3d 53, 70 (1st Cir. 2009). The overlay of Strickland on top of the already generous AEDPA standard creates a "doubly" deferential standard under which a federal court analyzes a state court's application of Strickland. Knowles v. Mirzyance, 556 U.S. 111, 123 (2009). Thus, when applying § 2254(d) in the context of ineffective assistance of counsel claims,

> the question is not whether [petitioner's] counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard.

Harrington v. Richter, 562 U.S. 86, 105 (2011).

## III. Application

### A.   Surveillance Video Footage

Upon multiple viewings of a zoomed-in, slowed-down version of the surveillance footage at issue, the MAC made the factual determination that the video did not, as petitioner insists, show Montanez inflicting the fatal stab wound. Sanchez, 100 Mass. App. Ct. at 648. Petitioner now alleges that this finding was an "unreasonable determination of the facts" and therefore trial counsel was constitutionally ineffective for failing to introduce a slowed version of the footage.

Because petitioner is challenging the state court's factual findings, he has an even higher presumption of correctness to overcome. Under 28 U.S.C. § 2254(e)(1), a state court's factual findings are entitled to a presumption of correctness which a petitioner must rebut by "clear and convincing evidence." Petitioner is obliged to show that the state court's review of the video was "objectively unreasonable." Miller-El, 537 U.S. at 340.

Petitioner's conclusory re-characterization of the record does not constitute support for such an assertion. Desrosiers v. Bissonette, 502 F.3d 38, 43 (1st Cir. 2007) ("[I]t is not enough for [the petitioner] simply to argue for the contrary inference [on habeas review]."). Petitioner offers no evidence, let alone clear and convincing evidence, to suggest that the factual

findings upon which the MAC based its conclusions were unreasonable or incorrect. He has therefore failed to meet his burden for habeas relief under 28 U.S.C. § 2254(d)(2).

To the degree that petitioner also challenges the MAC's conclusion that his trial counsel was not ineffective by failing to introduce a slowed version of the surveillance video, he fails to meet his burden under the doubly-deferential AEDPA-Strickland standard.[1] Both the superior court judge and the MAC separately reviewed the video and concluded that it did not support petitioner's claim of innocence. Furthermore, a slowed version of the video was played multiple times for the jury and the jury was given a copy of the video to review in deliberations, which they could have chosen to slow down if they wished. The MAC did not unreasonably apply established federal law in holding that counsel's failure to introduce yet another version of the video fell "well within the range of professionally reasonable judgments" that satisfy Strickland. 466 U.S. at 699. The video was cumulative of identical evidence already viewed by the jury (and which continued to be available to them during deliberations). See Gonzalez-Gonzalez v. United States, Fed. App'x 322, 325 (1st Cir. 2002)(holding that counsel's decision not to call a witness whose testimony "would

---

[1] The petition does not expressly challenge the MAC's decision on Strickland grounds but the Court will liberally construe filings from a pro se petitioner. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).

-10-

have offered only cumulative impeachment" evidence was not ineffective assistance of counsel); DiLibero v. Divris, No. 1:21-cv-30094-RGS, 2023 WL 11872627, at *14 (D. Mass. Mar. 20, 2023) (Cabell, Mag. J.), adopted, 2023 WL 2789156 (D. Mass. Apr. 5, 2023) (same). More importantly, the video was not exculpatory; in fact, it appears to corroborate petitioner's guilt. There is no "reasonable probability of a different result," i.e., a not-guilty verdict, when the evidence at issue does not support that verdict. Banks v. Dretke, 540 U.S. 668, 691 (2004).

## B.   Justification Instruction

Petitioner once again raises the argument made in his motion for a new trial that trial counsel was ineffective for failing to request a jury instruction that, if the killing was justified, no defendant could be convicted of murder. To support his claim, petitioner relies on a footnote in Commonwealth v. Norris, which states that

> [i]n order to convict [the co-defendant] of murder as a joint venturer, the jury would have to find that [the co-defendant] had participated in a murder with the principal.

462 Mass. at 143 n.11 (citing Commonwealth v. Zanetti, 454 Mass. 449, 468, 910 N.E.2d 869 (2009)). Petitioner asserts that Norris therefore compels a jury instruction stating that if the Commonwealth failed to disprove that Angel acted in defense of another (Elias) and the jury acquitted Angel on that basis, it was

-11-

also required to acquit Elias because the killing would be justified.

The MAC disagreed with petitioner's interpretation of Norris, holding that the SJC decision does not compel such a jury instruction under these circumstances. This Court is not at liberty to second-guess the MAC's interpretation of Norris:

> Federal courts sitting in habeas must accept state court rulings on state law issues. An inquiry into the correctness of a ruling on state law issues is no part of a federal court's habeas review of a state conviction.

Rodriguez v. Spencer, 412 F.3d 29, 37 (1st Cir. 2005) (quoting Estelle v. McGuire, 502 U.S. 62, 67 (1991)) (internal quotation marks omitted).

As such, the narrow question which this Court may properly adjudicate is whether the MAC unreasonably applied Strickland in concluding that trial counsel's performance was not constitutionally deficient for failing to request such a jury instruction. As respondent correctly explains, petitioner cannot establish a Strickland violation for his counsel's failure to "request an instruction wholly unsupported by relevant precedent." See also Cruz v. Maloney, 152 Fed. App'x 1, 6 (1st Cir. 2005) ("Failure to object to an accurate jury instruction does not qualify as ineffective assistance of counsel."); Alcequiecz v. Ryan, No. 1:14-cv-11693-ADB, 2017 WL 2346837, at *5 (D. Mass. May 30, 2017) (finding it was not

unreasonable for the SJC to determine that there is no ineffective assistance of counsel when "a competent attorney fail[s] to request instructions that [do] not apply" to the circumstances of a given case). The MAC therefore did not unreasonably apply <u>Strickland</u> in concluding that trial counsel did not provide constitutionally deficient assistance.

## ORDER

For the foregoing reasons, the motion of petitioner, Elias Sanchez, for a writ of habeas corpus (Docket No. 1) is **DENIED**.

**So ordered.**

_____
Nathaniel M. Gorton
United States District Judge

Dated March 17, 2025